**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**EASTERN DIVISION**

| | |
|---|---|
| _____ | ) |
| | ) |
| STATE OF WEST VIRGINIA, *et al.,* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| [and | ) |
| | ) |
| AMERICAN FARM BUREAU | ) |
| FEDERATION, *et al.,* | ) Civil No. 3:23-cv-0032 |
| | ) |
| Proposed Intervenor-Plaintiffs,] | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. ENVIRONMENTAL PROTECTION | ) |
| AGENCY, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE OF PROPOSED BUSINESS INTERVENORS

Proposed Business Intervenors respectfully request leave to intervene as plaintiffs as a matter of right pursuant to Federal Rule of Civil Procedure 24(a) or, in the alternative, request leave for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

## INTRODUCTION

This action is brought by a coalition of 24 States to challenge a final agency action by the Environmental Protection Agency and the U.S. Army Corps of Engineers (the "Agencies") promulgating a definition of Waters of the United States ("WOTUS") under the Clean Water Act ("CWA"). *See Revised Definition of "Waters of the United States,"* 88 Fed. Reg. 3004 (Jan. 18, 2023) (the "2023 Rule"). Proposed Business Intervenor trade groups represent the parties directly

regulated by this definition: the intervenors' members and their members' clients consist of countless businesses and individuals that own or use land for a broad variety of purposes including farming, ranching and other livestock production, manufacturing, mining of all types, oil and gas production and refining, power generation, road and other infrastructure construction, and home and commercial building. Between them, proposed Business Intervenors, their members, and their members' clients represent a large portion of the Nation's economic activity.[1] Business Intervenors

---

[1] Each of proposed Business Intervenors was formed to advocate for regulatory standards and policies that enable the success of the industry members that they represent. *See* American Farm Bureau Federation ("AFBF"), https://www.fb.org (explaining that AFBF is the "voice of agriculture" formed to represent farm and ranch families); American Petroleum Institute ("API"), https://www.api.org/about (explaining API "represents all segments of America's natural gas and oil industry," with the mission to promote "a strong, viable U.S. oil and natural gas industry"); American Road & Transportation Builders Association ("ARTBA"), https://www.artba.org/about (explaining that ARTBA "brings together all facets of the transportation construction industry to responsibly advocate for infrastructure investment and policy that meets the nation's need for safe and efficient travel"); Associated General Contractors of America ("AGC"), https://www.advocacy.agc.org ("AGC is the leading association for the construction industry" and is "[r]egarded as the 'voice of choice' for the construction industry"); Leading Builders of America ("LBA"), https://leadingbuilders.org/about (explaining that LBA represents "many of the largest homebuilding companies in North America" with the purpose "to preserve home affordability for American families … by . . . becoming actively engaged in issues that have the potential to impact home affordability"); National Apartment Association ("NAA"), https://naahq.org/about (NAA is "the leading voice for the rental housing industry" and "a powerful advocate" for "141 state, local, and global affiliates, over 95,000 members and more than 11.6 million apartment homes globally"); National Association of Home Builders of the United States ("NAHB"), https://www.nahb.org/why-nahb/about-nahb (explaining NAHB represents "the largest network of craftsmen, innovators, and problem solvers dedicated to building and enriching communities" and operates at the local, state, and national level to "protect the American Dream of housing opportunities for all"); National Association of REALTORS® ("NAR"), https://nar.realtor/about-nar (NAR membership is composed of residential and commercial brokers, salespeople, property managers, appraisers, counselors, and others engaged in the real estate industry" and NAR's mission is to "guid[e] our members and those they serve through the ever-evolving real estate landscape"); National Cattlemen's Beef Association ("NCBA"), https://www.ncba.org/about (explaining that NCBA represents more than 175,000 American cattle producers with the goal to "advance the economic, political and social interests of the U.S. cattle business"); National Corn Growers Association ("NCGA"), https://www.ncga.com/about-ncga/who-we-are/mission-and-vision (explaining NCGA represents nearly 40,000 corn farmers nationwide and the interests of more than 300,000 growers with the mission "to help protect and advance corn growers' interests"); National Mining Association ("NMA"), https://nma.org (explaining NMA is the voice

believe the 2023 Rule violates the CWA, the Administrative Procedure Act ("APA") and the Constitution, for multiple reasons.

Conducting activities on land often requires determining whether property includes a dry or wet feature that falls within the definition of WOTUS and is therefore subject to the Agencies' jurisdiction. If a feature is a WOTUS, it is subject to the CWA's permitting requirements and exposes the landowner or user to the threat of criminal and civil liability if activity occurs without a permit. The 2023 Rule creates enormous uncertainty for the regulated community, using impermissibly vague standards that will require costly case-by-case determinations or else will require property owners and users to scale-back or forgo important projects altogether or risk criminal penalties and significant fines.

Furthermore, the 2023 Rule was promulgated in violation of the APA and violates the CWA because it reads the word "navigable" out of the statute and therefore is disconnected from Congress's clear intent that WOTUS be navigable or actually adjacent to navigable waters. And

---

for U.S. mining with a membership of more than 250 corporations and organizations involved in mining and with the mission of "advocating for public policies that will help America fully and responsibly utilize its vast natural resources"); National Multifamily Housing Council ("NMHC"), https://www.nmhc.org/globalassets/advocacy/policy-agenda/nmhc_advocacy_overview.pdf ("NMHC's 1,700+ members develop, own, operate and finance a wide variety of apartment homes" and NMHC "work[s] with federal lawmakers on solutions to support the long-term viability of the apartment industry"); National Pork Producers Council ("NPPC"), http://nppc.org/about-us (explaining NPPC is the global voice for the Nation's pork producers with the mission to "advocate for the social, environmental, and economic sustainability of U.S. pork producers and their partners b fighting for reasonable public policy"); National Stone, Sand, & Gravel Association ("NSSGA"), https://www.nssga.org/who-we-are/about-us (explaining NSSGA is the leading advocate for the aggregate industry on behalf of its members—stone, sand and gravel producers—with the goal of promoting policies that protect the safe and environmentally responsible use of aggregates); North Dakota Farm Bureau, ndfb.org/aboutus/; Public Lands Council ("PLC"), https://publiclandscouncil.org/about-2/ (explaining PLC represents cattle and sheep producers with the mission to advocate for western ranchers); U.S. Poultry & Egg Association, https://www.uspoultry.org/about/ (explaining the association is the world's largest and most active poultry organization with the mission to serve as the voice for the feather industries) (all sites last visited February 16, 2023).

the 2023 Rule is unconstitutional because it (1) does not give the regulated community adequate notice as to what may be considered a WOTUS; (2) is an impermissible executive action that purports to answer a major policy question that must be resolved by Congress; and (3) is an impermissible exercise of legislative powers.

Because their members and their members' clients stand to be significantly harmed if the 2023 Rule stands, proposed Business Intervenors seek to intervene as plaintiffs. As representatives of a large part of the regulated community, proposed Business Intervenors are singularly well-situated to explain the harms that implementation of the 2023 Rule would cause to American industry. And by virtue of their experience in the area, the Business Intervenors are best-positioned to explain the legal flaws in the 2023 Rule as it applies to their properties.

As several courts recognized in granting many of the same proposed Business Intervenors' motions to intervene in earlier rounds of litigation challenging previous iterations of a WOTUS rule, proposed Business Intervenors, their members, and their members' clients "have a substantial stake in the outcome" of litigation determining the regulatory definition of WOTUS, in part because "the industries that these business groups represent operate in a regulatory sphere that include regulations governing water usage in the United States." *S.C. Coastal Cons. League ("SCCCL") v. Pruitt*, 2018 WL 2184395, at *8-9 (D.S.C. May 11, 2018); *see also Envt'l Integrity Project v. Wheeler*, No. 1:20-cv-1734, Dkt. 26, Order at 5 (D.D.C. Jan. 27, 2021) ("As regulated parties, the Business Entities' members have an obvious stake in the outcome of litigation that challenges the requirements and regulations governing the use of their property"); *New York v. Pruitt*, No. 1:18-cv-1030-JPO, Dkt. 57, Order at 2 (S.D.N.Y. Apr. 5, 2018) ("the industry groups have demonstrated a serious economic interest in the [WOTUS] rule, as it regulates discharge into waterways").

The same is true here. The lawsuit before this Court will determine the permissible parameters of the regulatory regime under which proposed Business Intervenors' members must operate. The Court should therefore grant proposed Business Intervenors leave to intervene to protect their interests in this litigation. The motion is timely; proposed Business Intervenors, whose members and members' clients are owners or users of land for a huge variety of business and commercial purposes, have regulatory and economic interests that will be impaired by the 2023 Rule; and the States, as government entities, cannot represent the interests of a portion of their constituents—the regulated business community—with the same perspective and vigor. Proposed Business Intervenors believe that their experience operating under the CWA and the various regulatory regimes implementing it, and their close involvement in every stage of recent rulemaking and litigation, will be helpful to the Court in resolving this case. The motion to intervene as of right or permissively should be granted.[2]

## HISTORY OF PROPOSED INTERVENORS' WOTUS LITIGATION

Proposed Business Intervenors have been heavily involved in past challenges to previous WOTUS rules and courts have frequently recognized the right of Proposed Business Intervenors, as key representatives of the regulated community, to intervene in litigation regarding the definition of WOTUS.

Because the agencies' regulatory jurisdiction extends to "waters of the United States" and no more, the definition of WOTUS establishes the scope of the Agencies' regulatory jurisdiction under the CWA. In issuing the 2015 Rule meant to clarify the definition of WOTUS, the Agencies

---

[2] Because proposed Business Intervenors do not wish "to pursue relief not requested by [the plaintiff States]," they do not need to show independent Article III standing in this case. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 435, 439-40 (2017). In any event, the proposed Business Intervenors have filed declarations, accompanying their Complaint as Exhibit A, that amply establish their standing.

set in motion several rounds of successive litigation. *See Clean Water Rule: Definition of "Waters of the United States,"* 80 Fed. Reg. 37,054 (June 29, 2015) ("2015 Rule"). The 2023 Rule is the latest in nearly a decade of administrative rulemakings and varied litigation, in which proposed Business Intervenors have participated at every step by submitting comments on every proposed rule and litigating for a lawful, reasonable standard.

Proposed Business Intervenors have been at the very heart of litigation over the definition of WOTUS for years. Among other things, they:[3]

- Challenged the jurisdiction of the U.S. Court of Appeals for the Sixth Circuit to hear consolidated petitions for review of the 2015 Rule, obtained certiorari from the Sixth Circuit's decision that it had jurisdiction, and then prevailed on the merits in the Supreme Court on their argument that those challenges belong in the first instance in district courts. *See Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617 (2018);

- Filed suit in the U.S. District Court for the Southern District of Texas, arguing that the 2015 Rule was unlawful and inconsistent with the text of the CWA because it covered a staggering amount of land that Congress never intended to reach and also was procedurally defective under the APA. The District Court agreed that the 2015 Rule was procedurally defective and remanded it to the Agencies. *Texas v. EPA*, 389 F. Supp. 3d 497 (S.D. Tex. 2019);

---

[3] Not every proposed Business Intervenor has been a party in the cases described below, but most of the Business Intervenors have been involved in some or all of them as either a party or an *amicus*.

- Filed suit in the District of Oklahoma to challenge the 2015 Rule. Compl., *Chamber of Commerce v. EPA*, No. 15-cv-386-CVE-PJC (N.D. Okla. July 10, 2015) (Dkt. 1), on appeal sub nom. *Oklahoma v. EPA*, 19-5055 (10th Cir. 2016);

- Intervened as plaintiffs in the Southern District of Georgia to challenge the lawfulness of the 2015 Rule, and obtained a ruling that it was both substantively and procedurally defective and a remand to the agencies. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019);

- Intervened as defendants and obtained dismissal on standing grounds of claims in the Western District of Washington challenging the 2015 Rule's provisions as to waste water treatment facilities. Order, *Puget Soundkeeper All. v. McCarthy*, No. 2:15-cv-1342-JCC (W.D. Wash. Nov. 25, 2019) (Dkt. 103);

- Intervened as defendants in suits by States and environmental organizations in the Southern District of New York and District of South Carolina that challenged regulatory efforts to delay enforcement of the 2015 Rule. *See* 83 Fed. Reg. 5200 (Feb. 6, 2018) ("Applicability Date Rule"); *SCCCL*, 2018 WL 2184395 (D.S.C. May 11, 2018); Order at 2, *New York v. Pruitt*, No. 1:18-cv-1030-JPO (S.D.N.Y. Apr. 5, 2018) (Dkt. 57); Order at 2, *Nat. Res. Def. Council v. EPA*, No. 1:18-cv-1048-JPO (S.D.N.Y. Feb. 6, 2018) (Dkt. 48);

- Intervened to defend a 2019 Rule repealing the 2015 Rule. *See* 84 Fed. Reg. 56,626 (Oct. 22, 2019) ("Repeal Rule"); Order, *S.C. Coastal Conservation League v. Wheeler*, No. 2:19-cv-3006-DCN (D.S.C. Feb. 19, 2020) (Dkt. 33);

- Intervened as defendants in suits by States and environmental groups that challenged a 2020 Rule, *The Navigable Waters Protection Rule: Definition of*

*"Waters of the United States,"* 85 Fed. Reg. 22,250 (Apr. 21, 2020) ("2020 Rule").
*Envt'l Integrity Project v. Wheeler*, No. 1:20-cv-1734 (D.D.C. Jan. 27, 2021) (Dkt.
26); *Colorado v. U.S. EPA*, No. 20-cv-01461 (D. Colo. July 15, 2020) (Dkt. 69);
*see also* Nos. 20-1263, 20-1238, 20-1262 (10th Cir. Aug. 14, 2020); *S.C. Coastal
Conservation League v. Wheeler*, No. 2:20-cv-1687 (D.S.C. June 11, 2020) (Dkt.
29);

- Defended the 2020 Rule on appeal after the Colorado district court enjoined its
  implementation, successfully arguing on appeal to the Tenth Circuit that the
  injunction should be vacated. *Colorado v. EPA*, 989 F.3d 874 (10th Cir. 2021); and

- Have challenged the 2023 Rule in *American Farm Bureau, et al. v. EPA*, No. 3:23-
  cv-20 (S.D. Tex.), which has been consolidated with *State of Texas v. EPA*, No.
  3:23-cv-17 (S.D. Tex.). The plaintiffs in the consolidated cases have moved for a
  preliminary injunction to enjoin enforcement of the 2023 Rule, and a hearing on
  that motion is currently set for March 15, 2023.

The prior cases in which proposed Business Intervenors were involved are closely
interconnected with the current challenge to the 2023 Rule. Each considers the legality of
administrative actions regarding the same provisions of the CWA defining the scope of federal
jurisdiction and the same long history of rulemaking and judicial decisions. Each addresses the
lawful scope of the Agencies' authority under the CWA to regulate land and waters, and affects
the ability of industry and private parties, like proposed Business Intervenors' members and their
members' clients, to use their land without obtaining a CWA permit.

8

## ARGUMENT

### A.    Proposed Business Intervenors Are Entitled to Intervene as of Right.

Pursuant to Rule 24(a)(2), "a court must permit anyone to intervene who: (1) files a timely motion to intervene; (2) 'claims an interest relating to the property or transaction that is the subject of the action'; (3) is so situated so that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) is not adequately represented by the existing parties." *Nat'l Parks Conservation Ass'n v. U.S. EPA*, 759 F.3d 969, 975 (8th Cir. 2014). The Eighth Circuit has "paraphrased [the standard] to say that a putative intervenor must establish that it: '(1) ha[s] a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties.'" *N. Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 921 (8th Cir. 2015). "Doubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action." *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992). Proposed Business Intervenors meet each requirement for intervention as of right.

### 1.    Proposed Business Intervenors' motion to intervene is timely.

"Whether a motion to intervene is timely is determined by considering all the circumstances of the case." *United States v. Union Elec. Co.,* 64 F.3d 1152, 1158–59 (8th Cir. 1995). In particular, a court considers three factors: "the reason for any delay by the proposed intervenor in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed." *Id.* at 1159. Under this standard, proposed Business Intervenors' motion is timely.

First, the proposed Business Intervenors have not delayed at all in filing this motion, and the litigation has not progressed past its very earliest stages. The motion comes just five days after the States filed their complaint and on the same day that States filed their motion for preliminary injunction. Second, intervention at this point causes no prejudice to other parties. The Business Intervenors submit with this motion their proposed Complaint and proposed Motion for Preliminary Injunction, therefore obviating any need for any delay in these proceedings. Nor would intervention otherwise delay proceedings because, as this is a challenge to an administrative rule, proposed Business Intervenors will not seek any discovery. By contrast, denial of the motion to intervene would cause proposed Business Intervenors considerable prejudice by preventing them from participating to protect their significant interests in the scope of the Agencies' regulatory authority. Under all three criteria, proposed Business Intervenors' motion is timely. *Union Elec. Co.*, 64 F.3d at 1159 (motion to intervene timely when filed four months after the suit itself was filed); *H.J. Martin & Son, Inc. v. Ferrellgas, Inc.*, 2020 WL 6122525, at *2 (D. N.D. Oct. 16, 2020) (motion to intervene filed five months after suit timely because intervenor was not dilatory in filing and litigation had not progressed so far as to make intervention impracticable).

### 2. Proposed Business Intervenors have a legally protectable interest that may be impaired or impeded by this litigation.

Proposed Business Intervenors satisfy the second requirement for intervention because they have "a recognized interest in the subject matter of the litigation." *Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996). The burden set by this requirement is not a heavy one. A party need show "only that its interest '*may* be' . . . impaired" by the resolution of the litigation. *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1308 (8th Cir. 1995) (emphasis added); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081-82 (8th Cir. 1999) ("It is enough under Rule 24(a) that [a party] *could* be prejudiced by an unfavorable resolution in later

litigation.") (emphasis added). The Eighth Circuit has repeatedly recognized intervening parties' economic interests as sufficient to allow intervention as of right. *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861 (8th Cir. 1997) (homeowners had "significantly protectable interest" in defending an ordinance when its validity would impact their property values); *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 989 F.2d 994, 997-98 (8th Cir. 1993) (recognizing interest when "[t]he result of the litigation . . . may affect the proposed intervenors' property values"); *S.E.C. v. Flight Transp. Corp.*, 699 F.2d 943, 948 (8th Cir. 1983) (holding that a "potential loss in the market value of the intervenors' [property] constituted a sufficient 'interest' under Rule 24(a)(2)").

Proposed Business Intervenors possess a practical interest that stands to be impacted by this litigation for at least two reasons. First, the definition of WOTUS determines the regulatory framework under which proposed Business Intervenors' members and their members' clients must operate. As a result, as many courts have recognized in previous rounds of WOTUS litigation, proposed Business Intervenors possess a significant, legally protected interest that they seek to safeguard by intervening to challenge the 2023 Rule. *See Nat'l Parks Conservation Ass'n*, 759 F.3d at 976 (an intervenor whose property would be regulated depending on the outcome of the suit met the recognized interest requirement). An unfavorable ruling would subject Business Intervenors to a broad but vague regulatory scheme, heightening the burden of compliance by subjecting them to extremely expensive and lengthy jurisdictional investigations or else forcing them to forgo or scale back activities or projects to avoid risking criminal penalties. Briggs Decl. ¶ 51; Coyner Decl. ¶ 14; Goldstein Decl. ¶ 11; Pilconis Decl. ¶ 27; Ward Decl. ¶ 12.[4]

---

[4] The declarations are attached to the proposed Complaint, filed with this motion, as Exhibit A.

Second, proposed Business Intervenors' members have an interest in pursuing their organizational purposes, including supporting and working to achieve public policies favorable to each organization's members. *Mausolf*, 85 F.3d at 1302-03 (conservation association's interest in "vindicating a conservationist vision for the Park" satisfied the recognized interest requirement). Indeed, proposed Business Intervenors have robustly and consistently advocated on their members' behalf throughout the past several years of WOTUS litigation. *See id.* at 1302 (intervening association "has worked hard over the years, in various proceedings, to protect [its] interest"); *Citizens for Community Action*, 558 F.2d at 869 (the intervenors "are vigorously defending this ordinance").

Given (1) the significant costs their members stand to incur if the broad and vague 2023 Rule is implemented and (2) proposed Business Intervenors' long history of advocating for a reasonable definition of WOTUS that conforms to Congress's language in the CWA, proposed Business Intervenors have demonstrated a sufficient interest that may be impaired by the litigation.

### 3. The Plaintiff States do not adequately represent proposed Business Intervenors' interests.

Proposed Business Intervenors "face[] a 'minimal burden' of showing that its interests are not adequately represented by the parties," a burden clearly met here. *Mausolf*, 85 F.3d at 1303; *see also Kansas Pub. Emps. Ret. Sys.*, 60 F.3d at 1308 ("This requirement is met by a minimal showing that representation 'may be' inadequate."). Proposed Business Intervenors, which represent private entities, cannot rely on the States to represent their interests. The Eighth Circuit has distinguished between the interests of Government and private citizens, even when directed at a common cause. *Sierra Club v. Robertson*, 960 F.2d 83 (8th Cir. 1992). A State's interests differ from those of private citizens and associations: "the State is a government entity, obliged to represent the interests of all its citizens" and "has an interest in protecting and promoting the state

economy on behalf of all its citizens." *Id.* at 86. Proposed Business Intervenors, on the other hand, "represent the interests of their members and answer only to their members." *Id.* And as the States' complaint makes clear, their focus is on their sovereign authority to manage the water and land within their boundaries and their role as state regulators—interests markedly different from those possessed by the proposed Business Intervenors. Dkt. 1, ¶¶ 24-59.

Neither a common legal goal nor "tactical similarity" between parties will "assure adequate representation." *See id.* Intervention is appropriate, where, as here, the interests of the intervenors are "not shared by the general citizenry of" a government entity party. *Mille Lacs*, 989 F.2d at 1001; *Nat'l Parks Conservation Ass'n*, 759 F.3d at 977 (contrasting government agency's "general interests" with regulated entity's narrower self-interest). Even if a State shares a common goal with a private party, those interests may diverge later in litigation. *Mille Lacs*, 989 F.2d at 1001 (explaining that "there is no assurance that the state will continue to support all the positions taken in its initial pleading" and that "what the state perceives as being in its interest may diverge substantially from the [would-be intervenors'] interests"); *Nat'l Parks Conservation Ass'n*, 759 F.3d at 977 (private entity "cannot be assured that the [government agency's] position will remain static or unaffected by unanticipated policy shifts"). "A potential conflict of this sort is sufficient to satisfy the proposed intervenors' minimal burden of showing that representation of their interests by the existing parties may be inadequate." *Mille Lacs*, 989 F.2d at 1001. Finally, proposed Business Intervenors' significant experience with WOTUS litigation and expertise in the effect of the 2023 Rule on their operations will allow them to provide the court with "expertise to the issues in this dispute." *Nat'l Parks Conservation Ass'n*, 759 F.3d at 977.

For these reasons, proposed Business Intervenors have met each of the requirements to intervene as of right, and this Court should therefore grant them leave to do so.

**B.     Alternatively, Proposed Business Intervenors Should Be Allowed to Intervene Permissively.**

Rule 24(b) provides that a court may allow a party to intervene if (1) its motion is timely; (2) the party "has a claim or defense that shares with the main action a common question of law or fact"; and (3) intervention will not cause undue delay or prejudice. Fed. R. Civ. P. 24(b); *see also H.J. Martin & Son, Inc. v. Ferrellgas, Inc.*, 2020 WL 6122525, *1-2 (D.N.D. Oct. 16, 2020). Those factors are satisfied here.

First, proposed Business Intervenors were not dilatory in seeking intervention, as this motion is filed less than a week after the States' initiated the action. Second, the claims that proposed Business Intervenors seek to bring involve common questions of law and fact regarding the validity of the 2023 Rule. Third, permitting proposed Business Intervenors to intervene to challenge the 2023 Rule would allow them to vindicate their substantial interests and, given their prompt action, would neither delay this case nor prejudice any of the parties. Additionally, in light of proposed Business Intervenors' lengthy and diligent history of involvement in WOTUS litigation, intervention in this case will aid the Court's resolution of the important challenges to this nationwide rule that affects a significant portion of the American economy.

## CONCLUSION

For the foregoing reasons, proposed Business Intervenors respectfully request that the Court grant the motion to intervene.

Dated this 21st day of February, 2023.    Respectfully submitted,

*/s/ Katie J. Schmidt*
Katie J. Schmidt, ND ID #06949
Andrew D. Cook ND ID #06278
OHNSTAD TWICHELL, P.C.
444 Sheyenne Street, Suite 102
P.O. Box 458
West Fargo, ND 58078-0458
Tel: (701) 282-3249
Fax: (701) 282-0825
Email: kschmidt@ohnstadlaw.com
Email: acook@ohnstadlaw.com

Timothy S. Bishop (*pro hac vice* pending)
Brett E. Legner (*pro hac vice* pending)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone:  (312) 701 7829
Facsimile:  (312) 706 8607
Email: tbishop@mayerbrown.com
Email: blegner@mayerbrown.com

James B. Danford, Jr. (*pro hac vice* pending)
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, TX 77004
Tel: 713-238-2700
Email: jdanford@mayerbrown.com

*Attorneys for the Proposed Business-Intervenors*