# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| States of West Virginia, North Dakota, Georgia, Iowa, Alabama, Alaska, Arkansas, Florida, Indiana, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, New Hampshire, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Utah, Virginia, and Wyoming, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| American Farm Bureau Federation; American Petroleum Institute; American Road and Transportation Builders Association; Associated General Contractors of America; Cass County Farm Bureau; Leading Builders of America; National Apartment Association; National Association of Home Builders of the United States; National Association of Realtors; National Cattlemen's Beef Association; National Corn Growers Association; National Mining Association; National Multifamily Housing Council; National Pork Producers Council; National Stone, Sand and Gravel Association; North Dakota Farm Bureau; Public Lands Council; and U.S. Poultry and Egg Association; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:23-cv-32  **ORDER** |
| Intervenor-Plaintiffs, | ) ) | |
| vs. | ) ) | |
| U.S. Environmental Protection Agency, Michael S. Regan, In His Official Capacity as Administrator of the U.S. Environmental Protection Agency; Michael L. Connor, In His Official Capacity as Assistant Secretary of the Army for Civil Works; and LTG Scott A. Spellmon, In His Official Capacity as Chief of Engineers and Commanding General, U.S. Army Corps of Engineer; | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) | |

```
Chickaloon Village Traditional Council,            )
Rappahannock Tribe, Tohono O'odham Nation,         )
and White Earth Band of Minnesota Chippewa         )
Tribe,                                             )
                                                   )
         Movants/Proposed-Intervenor Defendants.   )
```

Pursuant to the Administrative Procedure Act, twenty-four states challenge two federal agencies' promulgation of a revised definition of "Waters of the United States" (WOTUS) under the Clean Water Act and have moved for a preliminary injunction. The court recently granted plaintiff-intervenor status to eighteen trade groups. (Doc. 110). Four Native American tribes now move to intervene as defendants, both as of right and permissively. (Doc. 87). The federal defendants[1] oppose the tribes' intervention as of right but do not oppose their permissive intervention. (Doc. 106). The plaintiff states oppose the tribes' intervention, both as of right and permissively, and assert that if intervention is allowed, it should be allowed only after the states' motion for a preliminary injunction is resolved. (Doc. 108). After filing their motion to intervene, the four Native American tribes filed a proposed response to the plaintiff states' motion for a preliminary injunction, (Doc. 93), and the states moved to strike that response, (Doc. 95).

## Background

The administrative rule now challenged is the third revision of the WOTUS definition promulgated since 2015. The two prior revisions—promulgated in 2015 and in

---

[1] Defendants are the United States Environmental Protection Agency and its Administrator, the United States Army Corps of Engineers and its Chief of Engineers and Commanding General, and the Assistant Secretary of the Army for Civil Works.

2020—remain the subjects of pending litigation in multiple federal district courts, and a case involving interpretation of "Waters of the United States" under the Clean Water Act is pending before the United States Supreme Court. <u>Sackett v. EPA</u>, 8 F.4th 1075 (9th Cir. 2021), <u>cert. granted in part</u>, 142 S. Ct. 896 (2022). The 2023 Rule challenged in this case is the subject of litigation in at least two other federal districts—the Southern District of Texas and the Eastern District of Kentucky. The rule now challenged was effective as of March 20, 2023.

Movants are four federally recognized Native American tribes—the Chickaloon Village Traditional Council of Alaska, the Rappahannock Tribe of Virginia, the White Earth Band of Minnesota Chippewa Tribe, and the Tohono O'odham Nation of Arizona (collectively, the Tribes). Movants filed declarations of the chief or chair of each of the four tribes, describing how the Tribes and their members use waters in their respective locations for food, livelihood, and recreation and in connection with their tribal cultures. The declarations further describe how the Tribes' ability to continue to use the waters would be impacted if the 2023 WOTUS Rule were invalidated. (Docs. 87-2 to -5).

The federal defendants base their opposition to the movants' intervention as of right on a presumption that the United States adequately represents movants' interests in this action. The plaintiff states' opposition is also based on asserted adequacy of representation by the United States, in addition to an asserted burden to the existing parties and the court if intervention is allowed.

## Law and Discussion

Federal Rule of Civil Procedure 24 governs intervention:

**(a)**     **Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

. . .

    **(2)**    claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**(b)**    **Permissive Intervention.**

    **(1)**    **In General.** On timely motion, the court may permit anyone to intervene who:

. . .

        **(B)**    has a claim or defense that shares with the main action a common question of law or fact.

. . . .

**(c)**    **Notice and Pleading Required.** A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

Fed. R. Civ. P. 24. Movants submitted a proposed answer as required by the rule.

In considering a motion to intervene, the court must accept as true all allegations of the proposed intervenor complaint or answer and must construe those allegations in favor of the prospective intervenor. Nat'l Parks Conservation Ass'n v. U.S. EPA, 759 F.3d 969, 973 (8th Cir. 2014); United States v. Metro. St. Louis Sewer Dist., 569 F.3d 829, 834 (8th Cir. 2009); Sw. Ctr. For Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001). As described by the Eighth Circuit, one seeking to intervene under Rule 24(a) must bring a timely motion demonstrating (1) a recognized interest in the subject matter of the litigation that (2) might be impaired by disposition of the case and that (3) will not be adequately protected by the existing parties. N.D. ex rel. Stenehjem v. United States, 787 F.3d 918, 921 (8th Cir. 2015). The Eighth Circuit has stated doubts about

4

appropriateness of intervention should be resolved in favor of allowing it "because this serves the judicial system's interest in resolving all related controversies in a single action." Sierra Club v. Robertson, 960 F.2d 83, 86 (8th Cir. 1992).

**1.    Intervention as of Right**

The plaintiff states filed this action on February 16, 2023. The Tribes filed their motion to intervene on March 8, 2023, three weeks later. Neither plaintiffs nor defendants question timeliness of the Tribes' motion. Nor do the original parties question that the Tribes have a recognized interest in the subject matter of the litigation that might be impaired by a ruling in the case. The only disputed issue relevant to the motion is whether the federal defendants will adequately protect the Tribes' interests.[2]

The parties agree on standards for determining whether a putative intervenor's interests are adequately protected by existing parties. If one of the existing parties is "charged with the responsibility of representing the intervenor's interests," it is presumed those interests will be adequately represented. Chiglo v. City of Preston, 104 F.3d 185, 187 (8th Cir. 1997). The burden to show inadequacy of representation is generally light, Mausolf v. Babbit 85 F.3d 1295, 1303 (8th Cir. 1996), but the burden is "greater if the named party is a government entity that represents interests common to the public," Little Rock Sch. Dist. v. N. Little Rock Sch. Dist., 378 F.3d 774, 780 (8th Cir.

---

[2] Though the plaintiff states assert, "This Circuit also requires an intervening party to establish Article III standing," (Doc. 108, p. 2), they make no argument that the Tribes lack standing. The Tribes assert they satisfy requirements for Article III standing. But, as this court discussed in the order granting the trade groups' motion to intervene, the Supreme Court has determined an intervenor not seeking relief different from that sought by existing parties is not required to independently demonstrate Article III standing. (Doc. 110, p. 7). Here, while the federal defendants have not yet filed an answer, the Tribes' proposed answer seeks only dismissal of the plaintiff states' claims. (Doc. 87-1, p. 39-40). The Tribes do not assert any counterclaim that would be different from any relief sought by the federal defendants.

2004) (citing <u>Curry v. Regents of Univ. of Minn.</u>, 167 F.3d 420, 423 (8th Cir. 1999)).

Courts presume a government entity will adequately represent public interests, and the

party seeking to intervene must make a strong showing of inadequate representation.

<u>Id.</u> To overcome the presumption, for example, a proposed intervenor "may show that

its interests are distinct and cannot be subsumed within the public interest represented

by the government entity." <u>Id.</u> But differences of opinion concerning litigation strategy

are not sufficient reason to overcome the presumption of adequate representation.

<u>Jenkins ex rel. Jenkins v. Missouri</u>, 78 F.3d 1270, 1275 (8th Cir. 1996).

From the perspective of the Tribes, "tribal interests often are not adequately

represented by the federal government." (Doc. 88, p. 22). The Tribes assert that, as

sovereign nations, they bring "distinct perspectives on the need to protect our Nation's

waters and stand in *parens patriae* for their members." <u>Id.</u> at 6. The Tribes also describe

their participation in the rulemaking process that resulted in the 2023 WOTUS Rule,

and in litigation over previous iterations of the Rule, as supporting their motion. <u>Id.</u>

at 12. It is the Tribes' position that the 2023 WOTUS Rule does not go far enough in

identifying waters protected under the Clean Water Act, and they desire to present

argument supporting that position. <u>Id.</u> at 24.

Principally, the Tribes argue their interests are distinct and "not perfectly

aligned" with those of the federal defendants, since the defendant agencies must

consider interests of all citizens and weigh competing interests. The Tribes describe

their interests as more particularized and as including unique regional concerns, <u>id.</u> at

23, and differentiate their interests as "treaty-secured rights to particular waters" that

will be affected by the outcome of this case, (Doc. 109, p. 5). And, unlike in <u>South Dakota</u>

ex rel. Barnett v. United States Department of Interior, 317 F.3d 783, 786 (D.S.D. 2003), here the federal government is not acting on behalf of a tribal nation.

The Tribes point to the National Historic Preservation Act, which allows them to participate in government-to-government consultation to protect waters in which they have treaty, cultural, or other interests. That Act provides, "[T]he head of any Federal department or independent agency having authority to license any undertaking, . . . prior to the issuance of any license, shall take into account the effect of the undertaking on any historic property." 54 U.S.C. § 306108. See also 54 U.S.C. §§ 302701, 306102(b)(5)(B). If a body of water is within the scope of the WOTUS definition, it is subject to federal permitting—or licensing—requirements, so that the Tribes would have an opportunity to participate in the consultation processes involving waters in which they have treaty, cultural, or other interests. The consultation obligation would arise only if waters in which a tribe has an interest are protected by the Clean Water Act, that is, only if waters come within the scope of the WOTUS definition.

The legal relationship between the federal government and Native American tribes is unique and complex. The Tribes' interests and those of the federal defendants are not entirely aligned, especially considering the Tribes' treaty rights regarding some waters and their rights under the National Historic Preservation Act.

Keeping in mind the premise that any doubts should be resolved in favor of intervention, in this court's view, the Tribes have made the requisite showing that their interests are not adequately protected by the existing parties and have satisfied requirements of Rule 24(a)(2).

## 2.    Permissive Intervention

Alternatively to intervention as of right, the Tribes seek permissive intervention under Rule 24(b)(1)(B). In support of their position, they cite Arizona v. California, a water rights dispute. 460 U.S. 605 (1983). There, the Supreme Court determined Native American tribes, "at a minimum, satisf[ied] the standards for permissive intervention." Id. at 614. The court went on to state that tribes were entitled to "take their place as independent qualified members of the modern body politic" and that Native American tribes' "participation in litigation critical to their welfare should not be discouraged." Id. at 615 (citation and internal quotation marks omitted).

Consistent with their position that they will adequately represent the Tribes' interests, the federal defendants oppose intervention as of right but do not oppose permissive intervention. The federal defendants, however, do not identify any difference in effect of granting permissive intervention versus intervention as of right.

In opposing the Tribes being granted permissive intervention, the plaintiff states argue they would be prejudiced by being "forced to respond to two groups of parties with entirely consistent interests," which the plaintiff states see as likely to delay resolution of the case. (Doc. 108, p. 6). The plaintiff states argue the only distinct issue the Tribes raise is their desire for a "broader understanding of the [Clean Water Act] than the Agencies have pressed," which the plaintiff states see as irrelevant. Id. at 7. The plaintiff states cite Berkley Regional Insurance Co. v. Bernick-Odom, No. 4-15-CV17, 2017 WL 11272378, at *3 (D.N.D. Jan. 9, 2017), where permissive intervention was denied. But there, unlike in this case, the putative intervenor presented no claims in common with those of the main action.

The plaintiff states suggest, alternatively to allowing intervention, the Tribes be permitted to file an amicus curiae brief supporting their position. As another alternative, the plaintiff states argue intervention should be allowed only after the court has decided the pending motion for a preliminary injunction so as not to delay a decision on that motion. The plaintiff states argue the Tribes are in complete accord with the federal defendants on the issue presented in the preliminary injunction motion—whether the 2023 WOTUS Rule should go into effect while this litigation is underway. (Doc. 108, p. 8).

Even if movants were not viewed as satisfying Rule 24(a)'s requirements, this court would permit their intervention under Rule 24(b).

### 3.    Motion to Strike

On Friday, March 10, 2023, two days after filing their motion to intervene, the Tribes filed a document captioned "Defendant-Intervenors' Proposed Response in Opposition to Plaintiff[ ] States' Motion for Preliminary Injunction." (Doc. 93). The next business day, March 13, 2023, the plaintiff states filed a motion to strike the Tribes' proposed response. (Doc. 95). The Tribes promptly responded to the motion to strike on March 14, 2023. (Doc. 97).

Plaintiff states contend the Tribes' filing should not be considered because it was filed before they had been granted permission to intervene and because it is longer than allowed under a local rule. The Tribes respond that filing the document as a proposed response was in keeping with customary practice and done in an effort to "keep the case moving." Id. at 2.

As the plaintiff states argue, consideration of the Tribes' filing prior to intervenor status being granted would be inappropriate. But, though the docket entry does not

reflect it, the Tribes' filing is clearly captioned as a proposed response. The Tribes filed the proposed response on the date that had been set for the federal defendants to file their response, and in opposing the motion to strike, the Tribes state they filed on that date to follow the established schedule.

Civil Local Rule 7.1(B) limits memoranda supporting, and responses opposing, non-dispositive motions to twenty pages of argument. The plaintiff states were granted an additional five pages of argument for their memoranda supporting the preliminary injunction motion. (Doc. 47). The federal defendants were allowed a thirty-page response to the motion, (Doc. 78), but their response actually includes thirty-two pages of argument. (Doc. 92). The Tribes' proposed response contains thirty pages of argument; they describe the length as based on the order allowing the federal defendants a response of that length. The plaintiff states assert that, had the Tribes followed the local rule and obtained leave of court to submit a response of excess pages, the plaintiff states would have asked for "a few additional pages of their own for their reply." (Doc. 95-1, p. 5).

Because the Tribes' filing was clearly captioned as a proposed response, the court will not strike it as premature as the plaintiff states propose. The Tribes are directed to immediately file their proposed response as a response to the plaintiff states' motion for a preliminary injunction.

The motion for a preliminary injunction remains under consideration. Under Local Rule 7.1, the plaintiff states would have seven days from the filing of the Tribes' response to file a reply. But, because the Tribes filed the proposed response, the plaintiff states have now been aware of its contents for twenty days. The plaintiff states will therefore be given a more limited time in which to file any reply they deem necessary.

10

**Conclusion**

The court finds the Tribes meet requirements of Federal Rule of Civil Procedure 24(a) and alternatively meet requirements of Rule 24(b). Their motion to intervene, (Doc. 87), is therefore **GRANTED**. The Tribes are directed to submit their intervenor answer to the Clerk for filing,[3] the Clerk is directed to file the intervenor answer, and the Tribes are directed to serve that document.

The plaintiff states' motion to strike the Tribes' proposed response to the motion for a preliminary injunction, (Doc. 95), is **DENIED**. The Tribes are directed to file their proposed response to the motion for a preliminary injunction immediately. The plaintiff states may file a reply of **up to ten pages**, by **April 5, 2023**. Any reply must be limited to matters not addressed in the plaintiff states' reply to the federal defendants' response to the motion for a preliminary injunction.

**IT IS SO ORDERED**.

Dated this 31st day of March, 2023.

/s/ Alice R. Senechal

Alice R. Senechal
United States Magistrate Judge

---

[3] The proposed intervenor answer the Tribes submitted with their motion to intervene did not include the White Earth Band of Minnesota Chippewa Tribe in the caption. The Tribes must correct the caption before submitting the intervenor answer to the Clerk for filing.