# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# EASTERN DIVISION

| | |
|---|---|
| **STATES OF WEST VIRGINIA**, **NORTH DAKOTA**, **GEORGIA**, and **IOWA**, *et al.*, <br><br> Plaintiffs, <br><br> and <br><br> **AMERICAN FARM BUREAU FEDERATION**, *et al.*, <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> **U.S. ENVIRONMENTAL PROTECTION AGENCY**, e*t al.*, <br><br> Defendants, <br><br> and <br><br> **CHICKALOON VILLAGE TRADITIONAL COUNCIL**, *et al.*, <br><br> Intervenor-Defendants. | Case No. 3:23-cv-00032-DLH-ARS <br><br> Hon. Daniel L. Hovland |

**PLAINTIFF STATES' REPLY TO INTERVENOR-DEFENDANTS' RESPONSE TO PLAINTIFF STATES' MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I.   The States Are Likely To Succeed On The Merits ................................................................ 1

    A.   The Final Rule Conflicts With The CWA ................................................................ 1

    B.   The Final Rule Conflicts With The Constitution ...................................................... 6

II.  The Final Rule's Harms Are Real And Imminent ............................................................... 7

III. The Public Interest And Balance Of The Equities Support The States ............................. 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Paper Inst., Inc. v. EPA*,
   890 F.2d 869 (7th Cir. 1989) ...................................................................................1

*Cnty. of Maui v. Haw. Wildlife Fund*,
   140 S. Ct. 1462 (2020)..............................................................................................4

*Craig v. Simon*,
   980 F.3d 614 (8th Cir. 2020) ....................................................................................1

*In re EPA*,
   803 F.3d 804 (6th Cir. 2015) ..................................................................................10

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008)..................................................................................................2

*Georgia v. Wheeler*,
   418 F. Supp. 3d 1336 (S.D. Ga. 2019).....................................................................2

*Glossip v. Gross*,
   576 U.S. 863 (2015)..................................................................................................1

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   140 S. Ct. 2367 (2020)..............................................................................................2

*Luna Perez v. Sturgis Pub. Sch.*,
   143 S. Ct. 859 (2023)................................................................................................1

*Nat'l Wildlife Fed'n v. Gorsuch*,
   693 F.2d 156 (D.C. Cir. 1982)..................................................................................1

*NFIB v. OSHA*,
   142 S. Ct. 661 (2022)................................................................................................5

*Rapanos v. United States*,
   547 U.S. 715 (2006) .................................................................................................2

*Sackett v. EPA*,
   142 S. Ct. 896 (2022).....................................................................................4, 7, 10

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*,
   531 U.S. 159 (2001)..................................................................................................2

## TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Texas v. EPA*,
 No. 3:23-CV-17, 2023 WL 2574591 (S.D. Tex. Mar. 19, 2023) ................................................2

*Timpinaro v. SEC*,
 2 F.3d 453 (D.C. Cir. 1993) ......................................................................................................6

*United States v. Wilson*,
 133 F.3d 251 (4th Cir. 1997) ....................................................................................................4

*Vill. of Oconomowoc Lake v. Dayton Hudson Corp.*,
 24 F.3d 962 (7th Cir. 1994) ......................................................................................................3

*Weed v. Jenkins*,
 873 F.3d 1023 (8th Cir. 2017) ..................................................................................................6

*Whitman v. Am. Trucking Ass'ns*,
 531 U.S. 457 (2001) ..................................................................................................................6

**Statutes**

30 U.S.C. § 1019 ............................................................................................................................2

33 U.S.C. § 1344 ........................................................................................................................8, 9

33 U.S.C. § 1251 ........................................................................................................................1, 3

**Other Authorities**

82 Fed. Reg. 1860 (Jan. 6, 2017) ...................................................................................................8

86 Fed. Reg. 2744 (Jan. 13, 2021) .................................................................................................8

U.S. Gen. Acct. Off., GAO-04-297, Waters and Wetlands: Corps of
 Engineers Needs to Evaluate Its District Office Practices in
 Determining Jurisdiction (2004) ..............................................................................................5

The Clean Water Act says that the States' interests must count.  *See* 33 U.S.C. § 1251(b).  Yet the Tribes respond to the States' motion for preliminary injunction with hostility, insisting the States seek only "the freedom to *not* protect waters … or destroy[] [them] altogether."  ECF 120 at 8 n.2.  That's wrong—and the Tribes' "resort to this outlandish rhetoric reveals the weakness of [their] legal arguments."  *Glossip v. Gross*, 576 U.S. 863, 893 (2015).  When one looks to what matters—the Clean Water Act's language, the Constitution's limits, the Administrative Procedure Act's mandates, and the Final Rule's real-world impacts—then the outcome becomes plain:  The Court should preliminarily enjoin the Final Rule.

I. **The States Are Likely To Succeed On The Merits.**

Like the Agencies, the Tribes decline to focus on the "most important" part of the preliminary-injunction standard, the likelihood of success.  *Craig v. Simon*, 980 F.3d 614, 617 (8th Cir. 2020).  That factor decisively favors the States.

A. **The Final Rule Conflicts With The CWA.**

The Tribes start with broad statements about the Act's purported purposes.  *See* ECF 120 at 8-10, 16-19.  That's a dangerous game to begin with, as "[i]t is quite mistaken to assume … that any interpretation of a law that does more to advance a statute's putative goal must be the law."  *Luna Perez v. Sturgis Pub. Sch.*, 143 S. Ct. 859, 865 (2023) (cleaned up).  In any case, the Tribes err in thinking that "Congress intended to 'occupy the field' of protecting waters" when it passed the CWA.  ECF 120 at 24.  Congress might have intended to displace *federal* common law.  Yet "numerous courts have recognized the primacy of state and local enforcement of water pollution controls as a theme that resounds throughout the history of the Act."  *Am. Paper Inst., Inc. v. EPA*, 890 F.2d 869, 873 (7th Cir. 1989) (cleaned up).  "Congress did not want to interfere any more than necessary with state water management."  *Nat'l Wildlife Fed'n v. Gorsuch*, 693 F.2d 156, 178 (D.C. Cir. 1982).  The Supreme Court has thus seen "no clear indication [in the CWA] of

1

congressional intent to occupy the entire field of pollution remedies," let alone the whole realm of protecting waters. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 489 (2008).

Purpose aside, the Act's language confirms that the States are likely to succeed on their claims.

For instance, the States have now twice explained how "interstate waters" cannot be found in the Act's definitional terms. *See* ECF 44-1 at 17; ECF 98 at 7. The Tribes repeat some of the Agencies' flawed arguments, but they also add that "lengthy and rich Supreme Court precedent" empowers the Agencies to ignore navigability. ECF 120 at 26. Not so. The Supreme Court has stressed that "navigable" shows what "Congress had in mind as its authority for the CWA," *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172 (2001), so "the word 'navigable' must be given some effect," *Rapanos v. United States*, 547 U.S. 715, 779 (2006) (Kennedy, J., concurring). *See also id.* at 734-35 (plurality op.). No wonder, then, that two different district courts have said that the Agencies go too far when they try to re-define "waters of the United States" to reach interstate waters. *See Texas v. EPA*, No. 3:23-CV-17, 2023 WL 2574591, at *9 (S.D. Tex. Mar. 19, 2023); *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1359 (S.D. Ga. 2019).

When it comes to blanket jurisdiction over impoundments, the Tribes ignore the basic problem that the States have raised with the Final Rule's approach: The CWA does not suggest that the federal government may regulate waters that were *once* waters of the United States but now are not. Congress could have said that "navigable waters" are those that "are or were" "waters of the United States." *See, e.g.*, 30 U.S.C. § 1019 (referring to places where lands or resources "are or were" located). Yet it did not, and "absent provisions cannot be supplied by the courts." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020)

(cleaned up). Even taking the Tribes' purposivist approach on its own terms, it is hard to see how protecting an impoundment advances the CWA's objectives if an impoundment no longer bears a connection with "the Nation's waters." 33 U.S.C. § 1251(a). The issue might have been different if the Final Rule had limited itself to impoundments that also "satisf[ied] the criteria for other covered waters," ECF 120 at 27, but—again—it did not, ECF 1-2 at 73 n.91 (discussing how it is only possible that impoundments might also fall under other jurisdictional provisions). Even the Agencies do not suggest that impoundments bear a relevant connection in every case. ECF 1-2 at 74. At most, they refer to "seepage," but no court has said that this minimal connection is enough because groundwater is not itself part of the "waters of the United States." ECF 1-2 at 103; *see also, e.g.*, *Vill. of Oconomowoc Lake v. Dayton Hudson Corp.*, 24 F.3d 962, 965 (7th Cir. 1994) (Easterbrook, J.) ("[W]e are confident that the statute Congress enacted excludes *some* waters, and ground waters are a logical candidate." (emphasis in original)).

As to tributaries, the Tribes incorrectly suggest that the States "ignore the second part" of the test, which says covered tributaries must meet the significant nexus or relatively permanent standard. ECF 120 at 28. The States did not. ECF 44-1 at 18 ("Once a water is declared a tributary, it need only bear some 'relatively permanent' connection to or 'significant nexus' with a navigable water, territorial sea, interstate water, or impoundment to qualify as WOTUS."). Rather, the States explained that using these tests (which, particularly as to significant nexus, bear their own problems) leads to distant and temporary waters of all kinds being covered—especially given that a water may "indirectly" become a tributary and may be matched with other waters in the same broad "region" to meet the "materiality" threshold. *See* ECF 98 at 8. That's an exceptional problem when it comes to ephemeral and intermittent streams, where a weakened significant-nexus test provides few, if any, limits. After all, "[v]irtually all water, polluted or not, eventually makes

3

its way to navigable water." *Cnty. of Maui v. Haw. Wildlife Fund*, 140 S. Ct. 1462, 1470 (2020). So really, treating tributaries in this way is just a re-enactment of the Agencies' failed pre-*Rapanos* "drainage pattern" theory of jurisdiction. *United States v. Wilson*, 133 F.3d 251, 255, 257 (4th Cir. 1997) (vacating conviction under the CWA).

The Tribes are right that no one disputes "the importance of protecting wetlands," ECF 120 at 29, but top-down, federal mandates on wetlands must still fall within appropriate legal limits. The Final Rule provides no assurance that limits are in the offing. The Tribes focus on how the Final Rule provides some ill-defined criteria for determining "adjacency," any one of which can confer jurisdiction. ECF 1-2 at 87. The broad and ambiguous definition of adjacency is another problem, to be sure. But the States focused on how the Agencies have redefined the "relatively permanent" and "significant nexus" tests to reach waters that bear no connection with traditionally covered waters. ECF 44-1 at 19. *That* problem—along with the odd way in which the Agencies amalgamate waters—goes unaddressed by the Tribes. And one more thing lurks: the Agencies are about to receive additional guidance on what wetlands are covered from the Supreme Court. *Sackett v. EPA*, 142 S. Ct. 896 (2022). But they still refused to wait.

As for the last catch-all category, the Tribes only say that the category narrows the previous regime because it does not extend to all waters that could affect interstate or foreign commerce, as the 1986 Regulations nominally did. ECF 120 at 23. But as the States explained before, the Agencies had long ago dispensed with using that "interstate commerce" category in practice; asserting jurisdiction over those waters required headquarters approval that field offices largely chose not to pursue. ECF 44-1 at 19-20. And beyond that, this argument highlights a continuing problem in the way that the Agencies and their defenders have sought to justify the Final Rule. Often, the Agencies have cited a mishmash of informal processes, guidance documents,

4

understandings, and practices to define the prior regime. *See, e.g.*, ECF 1-2 at 4 n.6 (describing the pre-2015 regime as one shaped by "longstanding practice, as informed by applicable guidance, training, and experience"). These prior practices were so ambiguously defined that the Agencies' own field staff often struggled to implement them. *See* U.S. GEN. ACCT. OFF., GAO-04-297, WATERS AND WETLANDS: CORPS OF ENGINEERS NEEDS TO EVALUATE ITS DISTRICT OFFICE PRACTICES IN DETERMINING JURISDICTION 3 (2004), https://bit.ly/3m2kcpc ("Corps districts differ in how they interpret and apply the federal regulations when determining what wetlands and other waters fall within the jurisdiction of the federal government."). The Court should not permit the Agencies to weaponize this ambiguity to create a moving-target version of the prior "status quo" that in turn minimizes the changes and relative harms from the Final Rule. The Court should instead measure the Final Rule against the CWA's text and the authorities that construe it—not a half-formed historical record.

The Tribes misunderstand why the tools of interpretation point against the Agencies, too. For instance, the Tribes think that the major-questions doctrine does not apply either because the "waters of the United States" provision is jurisdictional (in the sense it defines the agency's scope of authority) or because the Agencies have engaged with the relevant statutory provision before. ECF 120 at 32-33. But just last year, the Supreme Court found that an agency offended the major-questions doctrine when it employed an oft-used jurisdictional provision of the Occupational Safety and Health Act to effect a "significant" new "encroachment" into a "vast" number of persons' interests. *NFIB v. OSHA*, 142 S. Ct. 661, 665 (2022) (citing 29 U.S.C. § 655(b)); *see also id.* at 668 (Gorsuch, J., concurring) (explaining that the Court had "rightly applie[d] the major questions doctrine). As for the federalism canon, the Tribes never dispute that regulation of water is an area of traditional state sovereign interest. ECF 44-1 at 21. Instead, they argue in general

5

ways about how the Final Rule respects federalism. But without a clear statement from Congress, the Agencies never had the right to rebalance this area of traditional state control in the first place. And when it comes to the constitutional avoidance concerns that arise from the non-delegation doctrine, the Tribes can muster only a footnote. ECF 120 at 33 n.8. But the non-delegation doctrine is not merely some concept that's ancillary to the major-questions doctrine. It requires that Congress at least provide real limits if it intends for an administrative agency to exercise vast control. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001) ("Congress … must provide [EPA] substantial guidance on setting [environmental] standards that affect the entire national economy."). If the Tribes are right that navigability means next to nothing, and waters can extend to lands and isolated waters, then those limits are missing from the CWA.

B. **The Final Rule Conflicts With The Constitution.**

As to our Constitution, the Tribes largely repeat the Agencies' arguments. But the Tribes' explanation for why the Final Rule is purportedly *not* vague proves otherwise. Remember that vagueness is a commonsense inquiry. A law is unconstitutionally vague where it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Weed v. Jenkins*, 873 F.3d 1023, 1030 (8th Cir. 2017). And here, the Tribes suggest that the "ordinary" person should consult hundreds of pages of administrative regulations, review a technical support document, canvass a science report, and then seek "help from the Corps" to know what activities might trigger criminal liability. ECF 120 at 36-37. That convoluted process affords "fair notice" in no real sense. *See, e.g.*, *Timpinaro v. SEC*, 2 F.3d 453, 460 (D.C. Cir. 1993) (finding that a set of regulations presented vagueness concerns when they rested on multiple factors that were "subject to seemingly open-ended interpretation" and presented even "greater" "uncertainty" when "these mysteries [we]re

6

considered in combination"). And it invites the Agencies' field offices to decide on a whim whether a particular land or water will fall within their reach. *See* Tr. of Oral Arg. at 97:22-98:7, *Sackett v. EPA*, 142 S. Ct. 896 (2022) (No. 21-454), https://bit.ly/3KcO4XF ("JUSTICE GORSUCH: You can call up your local friendly agent and he'll tell you, yes or no? … [S]o you don't know until he comes out and tells you?"). The Constitution requires more.

## II. The Final Rule's Harms Are Real And Imminent.

The Tribes devote much of their time to attacking the States' harms. Unlike the Agencies, the Tribes at least seem to recognize that the States' harms afford them standing. But the Tribes are mistaken in arguing that the States' harms do not warrant relief.

The States detailed the Final Rule's harmful expansion and effect. *See* ECF 1 ¶¶ 18-61; ECF 44-1 at 29-33; ECF 98 at 12-15; ECF 44-2 through 44-11. The declarations are backed by decades of experience, at the highest levels, of state employees upholding the States' long-standing sovereign interest in regulating the resources located within their borders. *See generally* ECF 44-2 to 44-11. These declarants must conduct careful, detailed, multi-factored assessments every day—for their own benefit and for their fellow citizen-landowners. *Cf.* ECF 120 at 18-19, 22-23 (the Tribes downplaying the States' assessments of their own ephemeral and intermittent streams and wetlands). And when assessments are tied to State actions like issuing permits, States must defend against challenges to the scope jurisdiction, a prospect that is even more costly when an unclear jurisdictional rule is in play. *See, e.g.*, ECF 44-2 at 5-6. The Final Rule makes each individual assessment more complicated, not less—assessments that are separate from, not supplemental to, what's required under the States' various laws and regulations.

A few examples show how the Tribes misunderstand the States' harms.

For example, the Tribes misunderstand what was said by declarant Duane DeKrey. *See* ECF 44-7. Nationwide permits do *not* cover "all impacts from a linear project"; the relevant

7

nationwide permit covers only activities causing impacts of less than half an acre per project. 86 Fed. Reg. 2744, 2818 (Jan. 13, 2021); 82 Fed. Reg. 1860, 1985-86 (Jan. 6, 2017). Nationwide permits are also valid for only five years, and they may be modified or revoked earlier. 33 U.S.C. § 1344(e)(2). Together, these facts mean that projects like the Red River Valley Water Supply Project—the project mentioned in Mr. DeKrey's declaration—must constantly reevaluate waters implicated by the project for potential CWA coverage. The Final Rule further effects real change over water features like prairie potholes because, as explained above, the Agencies were not generally invoking the general "other waters" provision in the prior regime. And these changes mean that, when it comes time to reassess jurisdiction, waters encountered by the Garrison Diversion are more likely to be declared jurisdictional under the Final Rule. That outcome will in turn produce real delays and additional costs for North Dakota. These harms are irreparable.

Another time, the Tribes wrongly dismiss North Dakota Agricultural Commissioner Douglas Goehring, who explains the harms to North Dakota's farming communities. The declaration details how the Final Rule's breadth and ambiguity forces farmers and ranchers to presume federal jurisdiction over water features they encounter. These farmers and ranchers lack the resources to hire environmental lawyers, expert permitting consultants, and hydraulic engineers to fight the Agencies' contrary determinations. ECF 1-2 at 103. Nor do they have the time to wait years for federal permits to be issued. Yet the Tribes say none of this constitutes "actual harm." ECF 120 at 18. Making matters worse, the Final Rule introduces new questions about how the prior-converted-croplands exception applies by removing previous portions of the definition. Before, these croplands could be put to any purposes so long as wetland conditions had not returned. Now, the lands lose their exception if there is any "change in use," even if the lands have not actually reverted to wetland conditions. ECF 1-2 at 103. So protections that have existed for

decades can disappear if farmers do not mechanically till the land to qualify for the exception.

Declarants from another Eighth Circuit jurisdiction—Iowa—gave more evidence of harm. The Tribes declare that one declarant was "incorrect" to compare the Final Rule to the 2020 Rule—but they never explain why. ECF 120 at 21. They fault the same declarant for not identifying a specific affected waterbody, which effectively punishes Iowa for the Final Rule's ambiguity. (By this logic, any rule difficult enough to interpret would be immune to challenge on ambiguity grounds.) Beyond that, the Tribes say the declarant—the Water Quality Bureau Chief for the State of Iowa's Department of Natural Resources, Lori McDaniel—is "incorrect" in describing her own State's standards. *Id.* Yet Ms. McDaniel was right that because the Final Rule subjects more waters to CWA jurisdiction, then more (expensive) Use Attainability Analyses will necessarily result. And the Tribes ignore the costs that Ms. McDaniel flags tied to Section 401 certifications and litigation. ECF 44-5 ¶¶ 6-7. The Tribes deride another Iowan declarant, Scott Marler, as offering "wishlist" for what would help the Iowa Department of Transportation engage with this regime. Mr. Marler really highlighted specific portions of the Final Rule that create indeterminacy and ambiguity that will in turn directly lead to increased costs. ECF 44-4. He likewise noted that more CWA Section 404 permits would be needed and explained how already-slow approval and mitigation processes will be further braked by an influx of new waters. *Id.* And Iowa Secretary of Agriculture Mike Naig gave four examples of projects that had been stymied or had cost increases because of unanticipated findings of jurisdictional waters. ECF 44-6. More of these surprise findings can be expected from the Final Rule.

These declarants and others show the States will be harmed. The Court should intervene.

### III. The Public Interest And Balance Of The Equities Support The States.

Remember, of course, that the States are not asking for final injunctive relief yet. Rather, the States are asking only for a pause to allow the parties and the Court to evaluate the serious

9

legal infirmities that appear on the Final Rule's face. A pause seems even more appropriate because the Supreme Court will likely address what the phrase "waters of the United States" means in just a few weeks' time. *See Sackett*, 142 S. Ct. 896. Meanwhile, a preliminary injunction would "temporarily silence[] the whirlwind of confusion that springs from uncertainty about the requirements of the new Rule and whether they will survive legal testing." *In re EPA*, 803 F.3d 804, 808 (6th Cir. 2015) (staying previous WOTUS rule); *see also, e.g.*, ECF 44-9 ¶ 7 (describing the "considerable burden" from "[k]eeping current with the continually changing federal WOTUS rules"). It would "honor[] the policy of cooperative federalism that informs the Clean Water Act and must attend the shared responsibility for safeguarding the nation's waters." *EPA*, 803 F.3d at 808. In fact, the Tribes provide perhaps the best explanation for why this pause is reasonable: "If Plaintiffs are successful [in] enjoining the Final Rule, Clean Water Act jurisdiction determinations will revert back to the pre-2015 regime, a regime that states and industry have applied and operated under for 40+ years." ECF 120 at 22.

The Tribes can only imagine one offsetting harm: an unidentified "waterbody" might "fall through the cracks" and be "polluted." ECF 120 at 37. But as should be clear by this point, the CWA already has a broad reach. And States have implemented many additional protections for waters beyond that law. *See, e.g.*, Br. of *Amici Curiae* States of W. Va. & 20 Other States at 6-9, *Sackett v. EPA*, 142 S. Ct. 896 (2022) (No. 21-454), 2021 WL 5022302 (cataloguing examples). So the chance of some unknown water falling outside the reach of all those laws and then experiencing an irreparable pollution incident is just too distant to justify withholding the States preliminary relief. The harms to the States from the Final Rule are here, now, today.

\* \* \* \*

The Court should grant the States' motion for preliminary injunction.

Respectfully submitted,

| | |
|---|---|
| PATRICK MORRISEY<br>Attorney General of West Virginia | DREW H. WRIGLEY<br>Attorney General of North Dakota |
| /s/ Michael R. Williams<br>Lindsay See<br>  Solicitor General<br>Michael R. Williams<br>  Senior Deputy Solicitor General | /s/ Margaret I. Olson<br>Margaret I. Olson – State Bar ID No. 06352<br>Jennifer L. Verleger – State Bar ID No. 06732<br>  Assistant Attorneys General |
| Office of the West Virginia Attorney General<br>State Capitol, Bldg 1, Room E-26<br>Charleston, WV 25305<br>(681) 313-4550<br>Lindsay.S.See@wvago.gov<br>Michael.R.Williams@wvago.gov | Office of Attorney General<br>500 N. 9th Street<br>Bismarck, ND 58501<br>Phone: (701) 328-3640<br>jverleger@nd.gov<br>maiolson@nd.gov |
| *Counsel for State of West Virginia* | *Counsel for State of North Dakota* |
| CHRISTOPHER M. CARR<br>Attorney General of Georgia | BRENNA BIRD<br>Attorney General of Iowa |
| /s/ Stephen J. Petrany<br>Stephen J. Petrany<br>  Solicitor General | /s/ Eric H. Wessan<br>Eric H. Wessan<br>  Solicitor General |
| Office of the Attorney General<br>40 Capitol Square, SW<br>Atlanta, Georgia 30334<br>(404) 458-3408<br>spetrany@law.ga.gov | 1305 E. Walnut Street<br>Des Moines, Iowa 50319<br>(515) 281-5164<br>(515) 281-4209 (fax)<br>eric.wessan@ag.iowa.gov |
| *Counsel for State of Georgia* | *Counsel for State of Iowa* |
| STEVE MARSHALL<br>Attorney General of Alabama | TREG TAYLOR<br>Attorney General of Alaska |
| /s/ Edmund G. LaCour Jr.<br>Edmund G. LaCour Jr. (ASB-9182-U81L)<br>  Solicitor General | /s/ David A. Wilkinson<br>David A. Wilkinson<br>  Senior Assistant Attorney General |
| Office of the Attorney General<br>State of Alabama<br>501 Washington Avenue | 1031 W. 4th Ave., Ste. 200<br>Anchorage, AK 99501<br>(907) 269-5100 |

P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for State of Alabama*

david.wilkinson@alaska.gov

*Counsel for State of Alaska*

TIM GRIFFIN
Attorney General of Arkansas

/s/ Dylan L. Jacobs
Nicholas J. Bronni
  Solicitor General
Dylan L. Jacobs
  Deputy Solicitor General

Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-6302
Nicholas.Bronni@arkansasag.gov
Dylan.Jacobs@arkansasag.gov

*Counsel for State of Arkansas*

ASHLEY MOODY
Attorney General of Florida

/s/ Natalie P. Christmas
Natalie P. Christmas (Fla. Bar 1019180)
  Counselor to the Attorney General

Florida Attorney General's Office
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)

natalie.christmas@myfloridalegal.com

*Counsel for State of Florida*

THEODORE E. ROKITA
Attorney General of Indiana

/s/ Thomas M. Fisher
Thomas M. Fisher
  Solicitor General

Indiana Attorney General's Office
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN 46204
(317) 232-6255
tom.fisher@atg.in.gov

*Counsel for State of Indiana*

KRIS KOBACH
Attorney General of Kansas

/s/ Jesse A. Burris
Jesse A. Burris
  Assistant Attorney General

Kansas Attorney General's Office
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Tel: (785) 368-8197
Jesse.Burris@ag.ks.gov

*Counsel for State of Kansas*

JEFF LANDRY

LYNN FITCH

| | |
|---|---|
| Attorney General of Louisiana | Attorney General of Mississippi |
| /s/ Elizabeth B. Murrill | /s/ Justin L. Matheny |
| Elizabeth B. Murrill<br>  Solicitor General<br>J. Scott St. John<br>  Deputy Solicitor General<br>Morgan Brungard<br>  Assistant Solicitor General<br>Tracy Short<br>  Assistant Attorney General | Justin L. Matheny (MS Bar No. 100754)<br>  Deputy Solicitor General<br><br>Mississippi Attorney General's Office<br>P.O. Box 220<br>Jackson, MS 39205-0220<br>Telephone: (601) 359-3680<br>Fax: (601) 359-2003<br>justin.matheny@ago.ms.gov |
| Louisiana Department of Justice<br>1885 N. Third Street<br>Baton Rouge, LA 70804<br>Tel: (225) 326-6766<br>murrille@ag.louisiana.gov<br>stjohnj@ag.louisiana.gov<br>brungardm@ag.louisiana.gov<br>shortt@ag.louisiana.gov | *Counsel for State of Mississippi* |
| *Counsel for State of Louisiana* | |
| ANDREW BAILEY<br>Attorney General of Missouri | AUSTIN KNUDSEN<br>Attorney General of Montana |
| /s/ Joshua M. Divine | /s/ Christian B. Corrigan |
| Joshua M. Divine, Mo. Bar No. 69875<br>  Solicitor General<br>Jeff P. Johnson, Mo. Bar No. 73249<br>  Deputy Solicitor General | Christian B. Corrigan<br>  Solicitor General<br>Brent Mead<br>  Deputy Solicitor General |
| Missouri Attorney General's Office<br>Post Office Box 899<br>Jefferson City, MO 65102<br>Tel: (573) 751-8870<br>Fax: (573) 751-0774<br>Josh.divine@ago.mo.gov | Office of the Montana Attorney General<br>215 N Sanders St<br>Helena, MT 59601<br>(406) 444-2707<br>Christian.Corrigan@mt.gov |
| *Counsel for State of Missouri* | *Counsel for State of Montana* |
| MICHAEL T. HILGERS<br>Attorney General of Nebraska | JOHN M. FORMELLA<br>Attorney General of New Hampshire |

13

| | |
|---|---|
| /s/ Eric J. Hamilton | /s/ Brandon F. Chase |
| Eric J. Hamilton | Brandon F. Chase |
|   Solicitor General |   Assistant Attorney General |
| | |
| Office of the Nebraska Attorney General | New Hampshire Department of Justice |
| 2115 State Capitol | 33 Capitol Street |
| Lincoln, NE 68509 | Concord, NH 03301 |
| (402) 471-2683 | (603) 271-3650 |
| Eric.Hamilton@nebraska.gov | brandon.f.chase@doj.nh.gov |
| | |
| *Counsel for State of Nebraska* | *Counsel for State of New Hampshire* |
| | |
| DAVE YOST | GENTNER F. DRUMMOND |
| Attorney General of Ohio | Attorney General of Oklahoma |
| | |
| /s/ Benjamin M. Flowers | /s/ Garry M. Gaskins, II |
| Benjamin M. Flowers | Garry M. Gaskins, II |
|   Ohio Solicitor General |   Solicitor General |
| | Zach West |
| 30 E. Broad St., 17th Floor |   Director of Special Litigation |
| Columbus, OH 43215 | Jennifer L. Lewis |
| Phone: 614.466-8980 |   Assistant Attorney General |
| bflowers@ohioago.gov | |
| | 313 N.E. 21st Street |
| *Counsel for State of Ohio* | Oklahoma City, OK 73105 |
| | Tel: (405) 521-3921 |
| | Garry.gaskins@oag.ok.gov |
| | Zach.west@oag.ok.gov |
| | Jennifer.lewis@oag.ok.gov |
| | |
| | *Counsel for State of Oklahoma* |
| | |
| ALAN WILSON | MARTY J. JACKLEY |
| Attorney General of South Carolina | Attorney General of South Dakota |
| | |
| /s/ J. Emory Smith, Jr. | /s/ Charles D. McGuigan |
| J. Emory Smith, Jr. | Charles D. McGuigan |
|   Deputy Solicitor General |   Deputy Attorney General Civil Division |
| | |
| Office of the Attorney General | 1302 E. Highway 14, Suite 1 |
| Post Office Box 11549 | Pierre, SD 57501 |
| Columbia, South Carolina 29211 | 605-773-3215 |
| Phone: (803) 734-3680; Fax: (803) 734-3677 | atgservice@state.sd.us |
| Email: ESmith@scag.gov | |

*Counsel for State of South Carolina*

JONATHAN SKRMETTI
Attorney General and Reporter
of the State of Tennessee

/s/ Gabriel Krimm
Gabriel Krimm
  Assistant Solicitor General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 253-5642
Clark.Hildabrand@ag.tn.gov

*Counsel for State of Tennessee*

JASON MIYARES
Attorney General of Virginia

/s/ Andrew N. Ferguson
Andrew N. Ferguson
  Solicitor General
Kevin M. Gallagher
  Deputy Solicitor General
M. Jordan Minot
  Assistant Solicitor General

Virginia Attorney General's Office
202 North 9th Street
Richmond, Virginia 23219
(804) 786-2071
aferguson@oag.state.va.us
kgallagher@oag.state.va.us
mminot@oag.state.va.us

*Counsel for Commonwealth of Virginia*


Dated: April 5, 2023

*Counsel for State of South Dakota*

SEAN REYES
Attorney General of Utah

/s/ Melissa Holyoak
Melissa Holyoak
  Solicitor General

Utah Attorney General's Office
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
melissaholyoak@agutah.gov

*Counsel for State of Utah*

BRIDGET HILL
Attorney General of Wyoming

/s/ Travis Jordan
Travis Jordan (ND Bar No. 08933)
  Senior Assistant Attorney General

Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
travis.jordan@wyo.gov

*Counsel for State of Wyoming*